IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| BOB RHODES, an individual;<br><br>Plaintiff,<br><br>vs.<br><br>RAYTHEON COMPANY, a Delaware corporation;<br><br>Defendant. | No. cv-10-625-RCC-CRP<br><br>**REPORT AND RECOMMENDATION** |

Pending before the Court is Defendant Raytheon Company's ("Defendant") Motion to Dismiss for untimely filing claims of disability discrimination and constructive discharge and failing to state a claim for intentional infliction of emotional distress. (Doc. 6). Plaintiff Bob Rhodes ("Plaintiff") filed a Response to Defendant's Motion to Dismiss (Doc. 21) and Defendant filed a Reply to the Response (Doc. 23). Plaintiff then filed a Motion to File Sur-Reply to Defendant's Motion to Dismiss (Doc. 24) and Defendant filed a Response in Opposition to Plaintiff's Motion to File Sur-Reply and Motion to Strike. (Doc. 26). The Court heard oral argument on July 6, 2011. (Doc. 30, Transcript of Oral Argument at Doc. 31).

**Factual and Procedural History**

This case derives from Plaintiff's employment relationship with Defendant. Defendant hired Plaintiff as a Mechanical Design Engineer in April 1988. (Doc. 1, ¶ 9). Plaintiff appears to have worked for Defendant for almost two decades without significant incident. Plaintiff alleges he began experiencing employment discrimination in December 2007. (Doc. 1, ¶¶ 15-17, Doc. 21, p.2).

In December 2007, Plaintiff was transferred from the small facility where he had worked to Defendant's main plant in Tucson. (Doc. 1, ¶¶ 15-17, Doc. 21, p.2). This facility was six times larger than his prior workplace and handicapped parking was often unavailable. (Doc. 1, ¶¶ 15,16, Doc. 21, p. 2). Plaintiff alleges he suffers from a debilitating hip and leg condition that have been a life-long disability. (Doc. 1, p.¶ 14, ¶ 35, ¶ 46, ¶ 53). For many years Defendant accommodated Plaintiff's disability, including providing him a handicapped parking space. (Doc. 21, pp. 1-2). Plaintiff alleges, however, that Defendant stopped accommodating him when he was transferred to Defendant's main plant. (Doc. 1, ¶¶ 15-17, Doc. 21, p.2).

Plaintiff alleges Defendant failed to accommodate him by (1) refusing to provide him with a dedicated parking place or an electric cart to minimize Plaintiff's need to walk; (2) holding staff meetings in a second floor conference with no elevator access and thus, inaccessible to Plaintiff; (3) refusing to provide Plaintiff with a reclining chair; and (5) refusing to grant Plaintiff a part-time position after Plaintiff's rehabilitation and recovery from an injury aggravating his disability in 2008. (Doc. 1, p. ¶¶ 16-17, 23-25, 38-51, 60-64, Doc. 21, p. 2-3). In January 2009, Plaintiff submitted his resignation to Defendant and his last day of work was January 16, 2009. (Doc. 1, ¶ 28).

In February 2009, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Doc. 21-1). The EEOC reviewed Plaintiff's charge and found cause to support it, but determined not to become involved. The EEOC issued Plaintiff a notice of right to sue dated July 7, 2010 ("First Letter"). A

notice of right to sue issued by the EEOC gives a plaintiff 90 days from receipt of the notice to file a lawsuit. (Doc. 21-2).

The EEOC mailed this First Letter to Plaintiff's former address and to Plaintiff's attorney. Plaintiff's mail, including the First Letter, was forwarded to his correct address. After he received the First Letter, Plaintiff reminded the EEOC that his address had changed. Plaintiff had previously informed the EEOC of his change of address.

A little over one week after the EEOC mailed Plaintiff the First Letter, it sent Plaintiff a second notice on July 16, 2010 ("Second Letter"). (Doc. 6-1, p.11). The Second Letter contained both a cover letter and a second notice of right to sue dated July 16, 2010. (Doc. 6-1, p. 11). In the cover letter, the EEOC informed Plaintiff that the First Letter was issued in error and subsequently rescinded. (Doc. 6-1, pp.10-11). The cover letter further stated that the EEOC now found no cause to support Plaintiff's charge and that Plaintiff had 90 days from receipt of the Second Letter to file a lawsuit.

The EEOC again sent this Second Letter to Plaintiff's former address. (Doc. 6-1, p. 11). In his affidavit Plaintiff states he received the Second Letter on July 22, 2010 via his forwarded mail. (Doc. 22-1). Plaintiff's attorney also received a copy of the Second Letter, although he does not know the exact date his office received the Second Letter. (Doc. 31). Plaintiff's attorney was on vacation at the time his office received the letter. He reviewed the Second Letter when he returned to his office.

On October 19, 2010 Plaintiff filed a Complaint in this Court. (Doc. 1). Based on Raytheon's alleged failure to accommodate Plaintiff's disability, Plaintiff alleges (1) Defendant violated the Americans with Disabilities Act ("ADA"); (2) Defendant constructively discharged Plaintiff and (3) Defendant caused Plaintiff intentional infliction of emotional distress ("IIED"). (Doc. 1).

On November 19, 2010, Defendant filed the pending Motion to Dismiss. (Doc. 6). In its Motion to Dismiss, Defendant argues Plaintiff's ADA and constructive discharge claims are time-barred as Plaintiff failed to file those claims within the 90-day limitations

period. (Doc. 6, pp. 5-7). Defendant further contends Plaintiff's IIED claim fails to state a plausible claim for relief. (Doc. 6, p. 7-11).

In his Response, Plaintiff contests the Motion, arguing he filed his federal case within 90 days of receiving the Second Letter. (Doc. 21, pp. 9-11). Plaintiff further contends the complaint makes a *prima facie* showing of his IIED claim. Defendant then filed its Reply, reasserting its arguments from the Motion to Dismiss. (Doc. 23).

## **The Timeliness of Plaintiff's ADA and Constructive Discharge Claims**

A person aggrieved by an alleged unlawful employment practice has ninety days to bring a civil action after the EEOC issues the notice of "right to sue." 42 U.S.C.A. §2000e-5(f)(1). This ninety-day period operates as a limitations period. *Payan v. Aramark Management Services Ltd. Partnership*, 495 F.3d 1119, 1121 (9th Cir.2007), *citing Scholar v. Pac. Bell*, 963 F.2d 264, 266-67 (9th Cir.1992). If a claimant does not file suit within ninety days "[of] the date EEOC dismisses a claim," then the action is time barred. *Id.* Therefore, estimating the date on which the limitations period begins is crucial to determining whether an action was timely filed. *Id.* at 1121-1122.

At issue in Defendant's Motion to Dismiss is when the 90-day statute of limitations period began. Defendant argues the ninety-day filing period commenced upon Plaintiff's receipt of the First Letter issued by the EEOC. (Doc. 6, p. 5). Defendant contends the Second Letter issued by the EEOC does not restart the limitations period unless Plaintiff can show the EEOC issued the Second Letter after reconsidering the merits of Plaintiff's claim and following proper procedure for rescinding the First Letter. (Doc. 6, p. 5, Doc. 23, pp.9-10). Defendant argues the EEOC failed to issue a "notice of intent to reconsider" and there is no indication that the EEOC reassessed its determination on the merits. 29 C.F.R. § 1601.21(b)(1). (Doc. 23, p. 9-10). Defendant argues the Second Letter was issued merely "to rectify a clerical error" in the First Letter. (Doc. 23, p. 10).

The Court disagrees with Defendant. It does appear the EEOC failed to follow the guidelines for rescinding a notice of right to sue as set out in the federal regulation. (Doc.

- 4 -

23, p. 10, Doc. 21, pp. 7-8). The federal regulation requires the EEOC to promptly issue a notice of intent to reconsider when it decides to reconsider its finding. 29 C.F.R.§1601.21(b)(1). The EEOC failed to send out a notice of intent to reconsider in this case. Instead, it sent Plaintiff the Second Letter in which it explained that it was rescinding its original cause finding of the First Letter, deciding that Plaintiff's charge was without cause, and issuing Plaintiff a second notice of right to sue dated July 16, 2010. The Second Letter stated Plaintiff had 90 days from receipt of that letter to file suit in federal court.

The Court will not impute the EEOC's failure to follow the federal regulation and issue a notice of intent to reconsider onto Plaintiff. The intent of the Second Letter was clear. In the Second Letter, the EEOC informed Plaintiff that it was changing its finding. And, in fact, it did change its finding from a cause to a no cause finding. The Second Letter informed Plaintiff that he had 90 days from receipt of that letter to file suit in federal court. Accompanying the cover letter, the EEOC issued Plaintiff another notice of right to sue that was dated July 16, 2010.

The Court is unpersuaded by Defendant's argument that the Second Letter was simply correcting a clerical or that the wrong form letter was initially sent. The Court will not bar Plaintiff's claims because of a procedural error committed by the EEOC. *Ramirez v. National Distillers & Chemicals Corp.*, 586 F.2d 1315, 1320 (9th Cir.1978), *citing Miller v. International Paper Co.*, 408 F.2d 283, 291 (5th Cir.1969) ("It is doubtful that a procedural error committed by the EEOC could bar a plaintiff's right to pursue a Title VII claim").

The Court's decision is unchanged by Defendant's reliance on three out of circuit cases and one Ninth Circuit case, all of which are distinguishable from the matter at hand. In *Gitlitz v. Compagnie Nationale Air France,* the Eleventh Circuit concluded that a <u>verbatim copy</u> of the initial letter issued as the second right-to-sue letter with a new date did not restart the ninety-day limitations period because the EEOC did not reconsider the merits of the employee's charges prior to issuing the second right-to-sue letter. 129 F.3d

554, 557 (11th Cir.1997). In *Santini v. Cleveland Clinic Florida*, the "right-to-sue" notice was <u>undated</u>, so the EEOC reissued a notice with a date to correct the technical defect. 232 F.3d 823, 824-825 (11th Cir.2000). The Eleventh Circuit found the issuance of a second notice was "immaterial" and the EEOC's re-issuance of notice of right to sue did not equitably toll the statutory filing period. *Id.* In *Strong-Fischer v. Peters*, the district court held that the limitations period began to run when the employee received her first right-to-sue letter because the second letter was not issued by the EEOC pursuant to a reconsideration on the merits, <u>but rather was "another copy" of the final agency decision.</u> 554 F.Supp.2d 19, 24. (D.D.C.2008). In *Lute v. Singer Co.* the Ninth Circuit addressed whether the EEOC had authority to issue a second notice. 678 F.2d 844 (9th Cir.1982). The Court concluded the EEOC did have authority to issue a second notice, and therefore, the second notice of right to sue triggered the 90-day limitations period. *Id*. at 846-847.

Based on the above analysis, the Court finds the Second Letter Plaintiff received from the EEOC triggered the 90-day limitations period. The Court must now determine when Plaintiff received that letter. The limitations period is triggered when "the EEOC delivers its notice to a claimant or the claimant's attorney, whichever comes first." *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 91-93 (1990). In the case before this Court, Plaintiff avers he personally received the Second Letter on July 22, 2010. (Doc. 22-1). Plaintiff's attorney concedes he also received a copy of the Second Letter but he does not know the exact date his office received the copy as he was on vacation when it arrived. (Doc. 31). When the date of actual receipt is unknown, the Court will estimate that date based on the date the EEOC issued the notice, with some compensation for mailing time. *Payan v. Aramark Management Services Ltd. Partnership*, 495 F.3d 1119, 1122 (9th Cir.2007). In *Payan*, the Court assumed three days to allow for mailing time. *Id.* at 1125-1126.

In the case before this Court, Plaintiff received the Second Letter on July 22, 2010. (Doc. 22-1). If the Court uses this date, Plaintiff timely filed his federal complaint on day

89 of the limitations period, October 19, 2010. (Doc. 1). Defendant argues the Court should not use Plaintiff's date of receipt as Plaintiff's attorney, without knowing the exact date of receipt, is assumed to have received the Second Letter three days after it was mailed. The Court agrees *Irwin* triggers the ninety-day limitations period from the date either the plaintiff or plaintiff's attorney first received the notice of right to sue, whichever date comes first. It is less clear to the Court, however, that *Irwin* requires the Court to assume the attorney received the notice three days after it was issued when that attorney does not know that exact date of receipt and the plaintiff does know the exact date he received the letter.

Even assuming Plaintiff's attorney received the Second Letter before Plaintiff, the Court finds the federal complaint was timely filed. The EEOC issued the Second Letter on July 16, 2010. That date was a Friday. Allowing three mailing days to a business office, the Court presumes Plaintiff's attorney received the Second Letter on Wednesday, July 21, 2010. The Court will not assume a legal office receives mail over the weekend given the United States Postal Service does not deliver mail on Sundays and most offices' staff do not work weekends. *Ortez v. Washington County*, 88 F.3d 804 (9th Cir. 1996) (Ninth Circuit notes the district court's finding that a complaint filed 94 days after the EEOC issued a notice of right to sue was timely).

The Court notes that when the *Payan* Court assumed three days for mailing time in 2007, Rule 6 of the Federal Rules of Civil Procedure provided that a period of less than 11 days did not include weekends or holidays. Fed.R.Civ.P. 6(a) (amended in 2009). This Court interprets *Payan's* three day period to not include weekends or holidays as the Ninth Circuit was approximating mailing time and the Federal Rules, at that time, did not count weekends and holidays in time periods less than 11 days.

With Plaintiff's counsel receiving the Second Letter on July 21, 2010, Plaintiff timely filed his federal complaint on October 19, 2010. The Magistrate Judge recommends the

District Court find Plaintiff's ADA and constructive discharge claims timely filed and deny the motion to dismiss with regard to these claims.

**The Sufficiency of Plaintiff's IIED Claim**

To state a claim for intentional infliction of emotional distress in Arizona, Plaintiff must allege: (1) the conduct by the defendant was extreme and outrageous; (2) the defendant intended to cause emotional distress or recklessly disregarded the near certainty that such distress would result from his conduct; and (3) severe emotional distress occurred as a result of the defendant's conduct. *Ford v. Revlon*, 153 Ariz. 38, 43, 734 P.2d 580, 585 (Ariz.1987) (internal citations omitted); *see also Mintz v. Bell Atlantic Sys. Leasing Int'l, Inc.*, 183 Ariz.550, 553-554, 905 P.2d 559, 562-563 (Ariz.Ct.App.1995). In its Motion to Dismiss, Defendant argues Plaintiff fails to allege "extreme and outrageous conduct" or "severe emotional distress." (Doc. 6, p. 8-11, Doc. 23, p. 10-11).

To allege extreme and outrageous conduct, a defendant's alleged acts must be "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Mintz,* 183 Ariz. at 550, 554, 905 P.2d at 563 (Ariz.Ct.App.1995). (internal citations omitted). "It is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Id.* at 183 Ariz. at 554, 905 P.2d at 564 (citations omitted).

Defendant cites a number of cases in which offensive conduct was not determined to be extreme and outrageous. In *Bodett v. Coxcom*, the Ninth Circuit held an employer's conduct was not extreme and outrageous when it terminated plaintiff-employee, an evangelical Christian, without severance for violating employer's harassment policy by coercing and harassing an openly gay subordinate. 366 F.3d 736, 747-749 (9th Cir.2004). In *Nelson v. Phoenix Resort Corp.* the Arizona appellate court concluded the manner in which plaintiff was terminated, even if wrongful, was not outrageous and extreme conduct

- 8 -

sufficient to establish a claim of IIED, where plaintiff was called to the office at 2 a.m., marched into the lobby by armed personnel and then fired in front of news media which had been invited to watch. 181 Ariz. 188, 199-200, 888 P.2d 1375, 1386-87 (Ariz.Ct.App.1994). In *Mintz*, the Arizona Court of Appeals held it was not extreme and outrageous conduct for an employer to force plaintiff-employee to return to work after she was hospitalized for emotional breakdown and further inform plaintiff-employee in the hospital that her job duties were being reassigned. 183 Ariz. at 554-555, 905 P.2d at 563-564.

In the case before this Court, Plaintiff alleges Defendant failed to provide him a handicapped parking space, Defendant held staff meetings on the second floor with no elevator access when Defendant could not climb stairs, Defendant failed to provide Plaintiff a reclining chair and an electric cart to travel the expansive workplace and Defendant failed to accommodate Plaintiff's multiple requests to work part-time. Plaintiff alleges this conduct violated Defendant's assumed anti-discrimination policy.[1] Plaintiff assumes Defendant's alleged anti-discrimination policy contains some mechanism for investigating claims of discrimination and alleges his claims were not properly investigated. Plaintiff alleges Defendant's failure to accommodate him began in December 2007 and continued for more than a year until he eventually resigned in January 2009.

The Court finds Plaintiff fails to allege extreme and outrageous conduct. While Plaintiff alleges Defendant failed to accommodate him for more than a year, he does not provide any detail into the frequency with which he suffered failed accommodations. It is unknown, for example, how often meetings were held on the second floor with no elevator access nor how often Plaintiff could not use his handicapped decal because handicapped parking spaces were full. Further, it is unknown with what persistence Plaintiff informed Defendant of its failure to accommodate him.

---

[1] Plaintiff does not yet have a copy of Defendant's anti-discrimination policy but intends to request it through discovery.

Plaintiff relies heavily on *Ford v. Revlon* to support his argument that he alleged extreme and outrageous conduct. In *Ford*, the plaintiff suffered sexual harassment for over a year. 153 Ariz. at 39-41, 734 P.2d at 581-583. The facts of that case give specific dates and instances when the plaintiff was harassed by her supervisor. *Id*. Further, the plaintiff offered specific dates and names for superiors in her company to whom she complained about these incidents. *Id*. The facts show the supervisors consistently failed to take action over the course of the year-long harassment. In the case before this Court, Plaintiff has failed to allege extreme and outrageous conduct in his complaint.

The Court next analyzes the sufficiency of Plaintiff's alleged severe emotional distress. "A line of demarcation should be drawn between conduct likely to cause mere emotional distress and that causing severe emotional distress." *Midas Muffler Shop v. Ellison*, 133 Ariz. 194, 199, 650 P.2d 496, 501 (Ariz.Ct.App.1982). (internal citations omitted). Severe emotional distress must be extreme. *Id.,* citing Restatement (Second) of Torts §46 Comment j (1965). "The law intervenes only where the distress is so severe that no reasonable man could be expected to endure it." *Pankratz v. Willis*, 155 Ariz. 8, 17, 744 P.2d 1182, 1191 (Ariz.Ct.App.1987), citing Restatement (Second) of Torts §46 Comment j (1965).

Severe emotional distress manifests in physical ailments. *See Pankratz v. Willis*, 155 Ariz. 8, 17, 744 P.2d 1182, 1191 (Ariz.Ct.App.1987) (plaintiff suffered anger and depression along with headaches and hemorrhoids); *Ford*, 153 Ariz. at 41, 734 P.2d at 583 (plaintiff suffered high blood pressure, a nervous tic in her left eye, chest pains, rapid breathing, fatigue, dizziness, and attempted suicide); *Vicente v. Barnett,* 2011 WL 332499 *1 (9th Cir.2011) (unpublished) (plaintiffs suffered anxiety, depression, insomnia and a psychological expert diagnosed them with post-traumatic stress disorder and other emotional disorders); *but see Spratt v. Northern Automotive Corp.*, 958 F.Supp. 456, 461 (D. Ariz. 1996) ("crying, being stressed and upset, and having headaches" is not sufficient for severe emotional distress).

In the case before this Court, Plaintiff alleges he has suffered anxiety, sleeplessness, depression, anger and humiliation. (Doc. 1, p. 14). Plaintiff also contends that Defendant's actions have caused the loss of several employee benefits making him feel insecure and apprehensive about his future retirement and need for medical care. (Doc. 1, p. 14). Plaintiff has not alleged physical manifestation of emotional distress nor has Plaintiff alleged a severity of the emotional distress.

The Magistrate Judge recommends the District Court grant Defendant's Motion to Dismiss with regard to Plaintiff's IIED claim. Plaintiff fails to allege extreme and outrageous conduct or severe emotional distress. The Court further recommends Plaintiff be given the opportunity to file an amended complaint containing facts, if any, to support extreme and outrageous conduct and severe emotional distress. If Plaintiff files an amended complaint with an IIED claim, that claim must contain details about the persistence and duration of Defendant's alleged conduct as well as details about the severity of the physical and mental repercussions of the alleged severe emotional distress.

**Plaintiff's Motion for Leave to File Sur-Reply**

Plaintiff seeks to file a Sur-Reply to rebut Defendant's allegations in the Reply that Plaintiff misstated facts, attempted to rewrite his Complaint, and offered conflicting facts and testimony to defeat Defendant's Motion to Dismiss. (Doc. 24). The Magistrate Judge has taken the facts alleged in the Complaint as true and analyzed the facts and arguments in the briefing on the Motion to Dismiss. A Sur-Reply is not necessary. The Magistrate Judge recommends denying Plaintiff's Motion to File a Sur-Reply. (Doc. 24).

**RECOMMENDATION**

The Magistrate Judge recommends the District Court, after its independent review, grant in part and deny in part Defendant's Motion to Dismiss. (Doc. 6). Plaintiff's ADA and constructive discharge claims were timely filed but Plaintiff failed to allege extreme and outrageous conduct and severe emotional distress to sustain his IIED claim. Plaintiff should be given the opportunity to file an amended complaint that alleges facts, if any, to support

extreme and outrageous conduct and severe emotional distress. The Magistrate Judge further recommends the District Court deny Plaintiff's Motion to File a Sur-Reply. (Doc. 24). Defendant's time to file a responsive pleading to the complaint after adjudication of this Motion is governed by Federal Rule of Civil Procedure 12(a)(4).

Pursuant to 28 U.S.C. § 636(b), any party may serve and file written objections within fourteen (14) days of being served with a copy of the Report and Recommendation. If objections are not timely filed, they may be deemed waived. The parties are advised that any objections filed are to be identified with the following case number: **cv-10-625-RCC**.

DATED this 27th day of July, 2011.

*Charles R. Pyle*
CHARLES R. PYLE
UNITED STATES MAGISTRATE JUDGE